**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| TRACI R.,[1] | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil No. 3:25-cv-54-SLS |
| | ) | |
| FRANK BISIGNANO,[2] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**MEMORANDUM OPINION**

In this action, Plaintiff Traci R. seeks review of the Commissioner of the Social Security

Administration's ("SSA") decision to deny in part her Title II application for disability insurance

benefits and Title XVI application for Supplemental Security Income ("SSI"). This matter comes

before the Court on cross-motions for summary judgment, which have been fully briefed, making

this matter ripe for review. (ECF Nos. 14, 15, 16.) The Court exercises jurisdiction with the

consent of the parties pursuant to 28 U.S.C. § 636(c)(1) (ECF Nos. 2, 17, 18.) and pursuant to 42

U.S.C. §§ 405(g) and 1383(c).

An Administrative Law Judge ("ALJ") found Plaintiff disabled as of March 5, 2023 but

not disabled prior to that date. (ECF No. 15, at 2.) Plaintiff now moves the Court to modify the

Commissioner's decision denying in part her social security benefits and either award her benefits

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.
[2] Frank Bisignano was sworn in as the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he has been substituted for the former Acting Commissioner as Defendant in this action. 42 U.S.C. § 405(g). No further action need be taken.

beginning on April 1, 2021, or in the alternative, remand this matter for further administrative proceedings consistent with the Court's decision. (ECF No. 14, at 1; ECF No. 15, at 2, 21.) As the basis for such relief, Plaintiff argues that the ALJ erred by not accounting for all of Plaintiff's physical and mental limitations in the residual functional capacity ("RFC") determination and improperly evaluating the medical opinion of Dr. Hong Nguyen. (*See* ECF No. 15, at 17-21.)

In response, the Commissioner contends that substantial evidence supports the ALJ's decision because the ALJ reasonably accounted for Plaintiff's functional limitations in the RFC finding (ECF No. 16, at 12-17) and properly considered the medical opinions and prior administrative medical findings (ECF No. 16, at 17-23). The Commissioner moves the Court to affirm the ALJ's findings. (ECF No. 16, at 2, 23.)

For the reasons set forth below, the Court finds that the ALJ complied with applicable legal standards in considering Plaintiff's physical and mental impairments and the medical opinion evidence. Additionally, substantial evidence supports the ALJ's RFC determination. Therefore, the Court will DENY Plaintiff's Motion for Summary Judgment or, in the Alternative, Motion for Remand (ECF No. 14), GRANT the Commissioner's Motion for Summary Judgment and Brief in Support Thereof (ECF No. 16), and AFFIRM the final decision of the Commissioner.

## I.     PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits and SSI on May 17, 2021, alleging disability beginning on January 2, 2017. (Administrative Record ("R.") at 114-15.)[3] Plaintiff had a prior, unfavorable decision from an ALJ dated March 31, 2021, so there is a

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. Civ. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers from this Memorandum Opinion. The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

previously adjudicated period from October 1, 2016 to March 31, 2021.[4] (R. at 10.)  In her applications, Plaintiff alleged that she suffered from "[a] brain aneurysm, left sided paralysis, heart issues, plates and screws in [her] left wrist, arteriovenous malformation, possible brain tumor, anxiety, PTSD, borderline personality disorder, panic attacks, difficulty with memory, and difficulty with focus." (R. at 105, 116, 127, 135.)  The SSA denied Plaintiff's claims initially and again upon reconsideration. (R. at 148-49, 153-54, 165-66, 175-76.)  Plaintiff requested a hearing before an ALJ, and one was held on September 14, 2023.  (R. at 43-79, 180-81.)

On November 29, 2023, the ALJ issued a written decision, finding Plaintiff not disabled within the meaning of the Social Security Act ("the Act") prior to March 5, 2023.  (R. at 10-25.) However, the ALJ found Plaintiff disabled as of March 5, 2023, and continuing through November 29, 2023 (the date of the decision).[5] (R. at 25.)  On December 11, 2024, the SSA Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (R. at 1-3.)  Plaintiff now seeks judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II.  STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

---

[4] The ALJ found no reason to disturb the prior ALJ's decision given the lack of material, new evidence during the overlapping period. (R. at 12.) Accordingly, the ALJ determined that *res judicata* applied from the alleged onset date of January 2, 2017 through the date of the prior ALJ's March 31, 2021 decision. (R. at 12.) Plaintiff does not challenge this portion of the ALJ's decision and instead moves the Court for a finding of disability as of April 1, 2021. (ECF No. 15, at 1-2.)

[5] Since Plaintiff "acquired sufficient quarters of coverage to remain insured through December 31, 2021" and Plaintiff did not establish disability on or before December 31, 2021, the ALJ found her not entitled to disability insurance benefits. (*See* R. at 11, 25.)  The ALJ found her entitled to SSI based on the disability finding as of March 5, 2023.  (R. at 25.)

3

than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation). At step one, the ALJ reviews the claimant's current work activity to determine if he or she has been participating in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, the ALJ determines whether the medical impairments meet or equal an impairment listed in the regulations. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ determines the claimant's RFC, which accounts for the most that the claimant can do despite his or her impairments. *Id.* §§ 404.1545(a)(1), 416.945(a)(1).

At step four, the ALJ assesses whether the claimant can perform his or her past employment given his or her RFC. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, and the claimant must prove that his or her limitations preclude the claimant from performing his or her past relevant work. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). If such past work can be performed, then benefits will not be awarded, and the analysis ends. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f). However, if the claimant cannot perform his or her past work,

4

the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The Commissioner usually offers this evidence through the testimony of a vocational expert. *See Mascio*, 780 F.3d at 635.

In reviewing a decision to deny benefits, the Court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Id.* at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion. *Id.*

To determine whether substantial evidence exists, the Court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (second alteration in original)); *see Craig*, 76 F.3d. at 589. The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If a fact is supported by substantial evidence, the Court must affirm, regardless of whether the Court agrees with such

5

findings.  *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)).  If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the Court must reverse the decision.  *See Breeden*, 493 F.2d at 1007.

### III.    THE ALJ'S DECISION

The ALJ analyzed Plaintiff's disability claim under the five-step evaluation process.  (R. at 15-25); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Mascio*, 780 F.3d at 634-35.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 1, 2021. (R. at 15.)

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "history of cerebral vascular accident (CVA); mild left hemiparesis; history of left wrist distal extra articular fracture; migraine disorder; history of myocardial infarct; depressive disorder; attention deficit hyperactivity disorder (ADHD); anxiety disorder; and post-traumatic stress disorder (PTSD)."  (R. at 15.)

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 16-18.)  The ALJ considered the four broad areas of mental functioning (commonly called "paragraph B" criteria) and concluded that Plaintiff's mental impairments did not meet or equal the criteria for depressive disorder, anxiety disorder, ADHD, or PTSD.[6]  (*See* R. at 16-18); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(B)(3), (5), (9), (11).

---

[6] The SSA evaluates the effects of a mental disorder on four areas of mental functioning based on a five-point rating scale.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2).  An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis in an area.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(e).  A marked limitation exists when an impairment seriously limits the ability to do the same.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(d).  Moderate indicates a fair limitation, mild includes a slight limitation, and "no"

In the first functional area of "understanding, remembering, or applying information," the ALJ found Plaintiff had a moderate limitation. (R. at 17.) The ALJ acknowledged Plaintiff's history of CVA and neurological treatment with noted complaints of memory deficits but emphasized that Plaintiff was able to give a "good history of her medical and mental health history to treating and examining practitioners." (R. at 17.) The ALJ found Plaintiff able to exercise "a basic level of understanding, remembering, and applying information" because she could perform various daily activities, including watching TV, FaceTiming with family, reading, cooking, performing household chores, attending medical appointments, paying bills, counting change, handling finances, and shopping online. (R. at 17.) In addition, the ALJ noted that mental status exams throughout the record were generally "unremarkable" with reports showing "no serious deficits in long-term memory, short-term memory, insight, and judgment." (R. at 17.)

Under the second functional area of "interacting with others," the ALJ found Plaintiff had a mild limitation. (R. at 17.) Plaintiff stated that she had "no problem with social interactions" and had her grandchildren at her home "a few times per week." (R. at 17.) The ALJ noted that Plaintiff testified to experiencing anxiety and panic attacks while in public but found that Plaintiff's medical record affirmed she "generally acted normally" with treating physicians and was described as "pleasant, cooperative… and exhibit[ing] no serious deficiencies in eye contact, speech, or conversation." (R. at 17.)

In the third functional area of "concentrating, persisting, or maintaining pace," the ALJ found Plaintiff moderately limited. (R. at 17.) The ALJ determined that Plaintiff's activities of watching TV, reading, making candles, and handling finances demonstrated Plaintiff's ability to

---

or "none" means the claimant can function in the area independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(a)-(c).

7

exercise "some concentration, persistence, and pace." (R. at 17-18.)  Further, Plaintiff received "normal mental status examination results" and was not observed to be "overly distractable or slow" by treating practitioners. (R. at 17.)

In the final functional area, the ALJ found Plaintiff moderately limited in "adapting [and] managing oneself." (R. at 18.)  The ALJ observed that Plaintiff received help from one of her children for physical work, but she could otherwise live independently, make meals, do chores, wear appropriate attire, and exercise sufficient hygiene. (R. at 18.)

The ALJ then determined Plaintiff's RFC. (R. at 18-23.)  Based on the record, the ALJ found that Plaintiff retained the ability to perform sedentary work as defined by 20 C.F.R. §§ 404.1567(a) and 416.967(a) with the following limitations:

> [Plaintiff is] limited to lifting and carrying less than 5 pounds with nondominant left, upper extremity; occasional climbing of ramps and stairs but never ladders, ropes, or scaffolds; occasional push/pull and fingering with the left upper extremity; occasional use of foot controls with left lower extremity; occasional balance, stoop, kneel, crouch, or crawl; occasional exposure to extreme temperatures and vibration but no exposure to hazards such as dangerous moving machinery or unprotected heights; [Plaintiff] can understand and remember simple instructions and carry out simple, routine tasks; and would be off task 10% of the workday, in addition to regular breaks, due to fatigue and other symptoms of the impairments.

(R. at 18.)

In arriving at the RFC, the ALJ first summarized Plaintiff's subjective complaints. (R. at 18-19.)  At the hearing, Plaintiff testified that she could not work due to physical and mental impairments. (R. at 19.)  Specifically, Plaintiff reported experiencing daily swelling and pain in her left lower and upper extremities caused by CVA. (R. at 19.)  Plaintiff stated she could not use her left arm at all but could lift a gallon of milk with her right hand. (R. at 19.)  Plaintiff reported weakness in her left leg causing her to walk with a limp and requiring the use of a cane for ambulation for the last three years. (R. at 19.)  Plaintiff stated that she can stand for five minutes, walk twenty feet, and sit for ten minutes. (R. at 19.)  However, Plaintiff noted that she experiences

fatigue and swelling in her left upper and lower extremities, which requires her to lie down during the day and elevate her legs. (R. at 19.) Plaintiff reported that she falls three times a week. (R. at 19.) Plaintiff also reported that she had migraines "four to ten times a week," but that her headaches were "always in the background," with severe headaches lasting about thirty minutes. (R. at 19.)

Regarding her mental impairments, Plaintiff testified that she suffered from depression, memory deficits, a compromised ability to pay attention or focus, and PTSD-induced flashbacks and nightmares. (R. at 19.) She also reported experiencing chest pain and shortness of breath from panic attacks, which occur three to five times a week. (R. at 19.) Plaintiff noted the medication she took for panic attacks helped "somewhat." (R. at 19.)

The ALJ determined that although medical records confirmed Plaintiff's diagnoses of "history of CVA; mild left hemiparesis; history of left wrist distal extra articular fracture; migraine disorder; history of myocardial infarct; depressive disorder; ADHD; anxiety disorder; and PTSD," they did not support the severity Plaintiff alleged. (R. at 19.)

The ALJ then detailed Plaintiff's medical records pertaining to her impairments. (R. at 19-21.) The ALJ first considered medical evidence relating to Plaintiff's "history of CVA and resulting left-sided, mild hemiparesis." (R. at 19.) Plaintiff began treatment with Neurology at Northwest Hospital in June 2020. (R. at 19.) Records showed that Plaintiff was experiencing "word finding and memory issues." (R. at 19.) However, exam results from September 2020 reported that Plaintiff's "recent and remote memory" were intact. (*See* R. at 19 (citing Ex. B14F/17 [R. at 816]).)

9

In January 2021, Plaintiff complained of "poor balance and chronic pain." (R. at 20.) Records from her physical exam showed "normal station" and "a left limping antalgic gait," but Plaintiff could "ambulate without assistance." (R. at 20.)

In February 2021, Plaintiff suffered a left wrist fracture with surgery recommended due to her "high level of activity." (R. at 20 (citing Ex. B24F/5 [R. at 1235]).) Plaintiff underwent surgery in March 2021. (R. at 20.) Plaintiff's orthopedic records showed a hairline fracture to her left finger that occurred two weeks post-op, causing "slightly more pain" to her wrist. (R. at 20.) Her hairline fracture was treated with a splint. (R. at 20.) At a follow-up appointment in April 2021, Plaintiff reported "minimal pain but had some stiffness and discomfort with range of motion." (R. at 20.)

April 2021 records showed that Plaintiff could "ambulate without an assistive device," and a physical exam showed "normal gait, memory, and musculoskeletal functioning." (R. at 20.) In August 2021, Plaintiff's records noted that she reported "falling regularly." (R. at 20.) Plaintiff sought treatment at the emergency room for a fall in September 2021. (R. at 20.) In December 2021, her records noted she was using a quad cane. (R. at 20). Plaintiff also consulted with a neurosurgeon, who recommended that she use an assistive device to avoid falls. (R. at 20.)

In March 2022, Plaintiff saw a specialist for her cognitive and memory complaints, who found Plaintiff's gait, memory, and musculoskeletal functioning to all be normal. (R. at 20.) Her physical and psychiatric exam findings did not mention Plaintiff's use of a cane. (R. at 20.) However, Plaintiff's records from Sinai Neurology from April 2022 noted a cane-assisted gait. (R. at 20.) In June 2022, Plaintiff's exam showed she was "moving her bilateral upper extremities at will." (R. at 20.)

10

Plaintiff's mental health treatment records showed "normal functioning in all areas" with occasional findings of "fair" insight and judgment and "constricted" affect. (R. at 21.) Although Plaintiff had July 2022 diagnoses of "PTSD, anxiety, depression, and substance abuse in sustained remission," her "current mental status exam showed normal findings including euthymic mood, congruent affect, intact memory, good attention, and excellent insight and judgment." (R. at 21.) Narrative notes from the exam stated, "[Plaintiff] was thriving and doing well; she denied any anxiety or depression." (R. at 21 (citing Ex. B20F/189 [R. at 1133]).) Since the July 2022 visit, the record contained no evidence of further mental health treatment, including no evidence of inpatient or psychiatric hospitalizations. (R. at 21.)

Considering her physical impairments, the ALJ limited Plaintiff to sedentary work with "no need for an ambulatory device" and included additional limitations on lifting and carrying with her left upper extremity to accommodate her left wrist issues, left side mild hemiparesis, and complaints of pain. (R. at 20.) Considering her mental impairments, the ALJ further limited Plaintiff to "simple work with off task 10% of the day in addition to normal breaks." (R. at 20.)

The ALJ also considered the medical opinions and prior administrative medical findings. (R. at 21-23.) The state agency psychiatric consultants disagreed as to whether Plaintiff had a mental impairment. (*See* R. at 22.) The ALJ found Dr. May's initial assessment persuasive because Dr. May's findings of mild-to-moderate functional limitations were consistent with the evidence submitted at the hearing level, including Plaintiff's treatment for depression, anxiety, and PTSD, combined with mental status examinations consistently within the normal range. (R. at 22.) On reconsideration, Dr. Lessans found insufficient evidence of mental impairment. (R. at 22.) However, the ALJ did not find Dr. Lessans' assessment persuasive because Plaintiff's

11

testimony and the hearing level evidence supported a finding of a severe mental impairment.  (R. at 22.)

The state agency medical consultants reduced Plaintiff to "a light level of lifting and carrying but sedentary level of walking and standing."  (R. at 22.)  The ALJ noted that those opinions were "partly persuasive," finding the records supported the noted "postural and environmental restrictions" but not Plaintiff's ability to lift or carry on her left side.  (R. at 22.)

The ALJ then considered the medical opinion of Dr. Hong Nguyen, finding it unpersuasive. (R. at 22-23.)  Dr. Nguyen reported that Plaintiff's impairments had existed since 2005.  (R. at 22.) The ALJ found this unsupported and inconsistent with the record because Plaintiff's records do not date back to 2005 and Plaintiff had worked since 2005.  (R. at 22.)  Dr. Nguyen noted that Plaintiff would need to take unscheduled breaks every thirty minutes, change positions, elevate her legs with prolonged sitting, and use a cane to walk.  (R. at 22-23.)  Dr. Nguyen also stated that Plaintiff could sit for fifteen minutes and stand for five minutes, but could not "sit, stand, or walk at all in an 8-hour workday."  (R. at 22.)  The ALJ found Dr. Nguyen's opinion inconsistent internally and with the record evidence.  (R. at 22.)  Specifically, the ALJ explained that Dr. Nguyen's assessment that Plaintiff cannot sit, stand, or walk at all during the workday is inconsistent with his assessment that Plaintiff must change positions, elevate her legs, and use a cane to walk.  (*See* R. at 22-23.)  Further, the ALJ found Dr. Nguyen's opinion unpersuasive because Dr. Nguyen "only saw [Plaintiff] one time and it was just 10 days before [Dr. Nguyen] wrote the assessment."  (R. at 22.)

After completing the RFC assessment, the ALJ found at step four that Plaintiff could not perform her past relevant work.  (R. at 23.)  The ALJ then determined Plaintiff's vocational factors, including that she had at least a high school education and met the definition of a younger

individual at the alleged onset date. (R. at 23.) On March 5, 2023, Plaintiff changed age category to an individual closely approaching advanced age. (R. at 23.)

At step five, the ALJ found Plaintiff able to perform jobs existing in significant numbers in the national economy considering her vocational factors and RFC prior to March 5, 2023. (R. at 23.) The ALJ adopted the vocational expert's testimony that Plaintiff could perform the sedentary, unskilled jobs of charge account clerk and order clerk food and beverage. (R. at 24.) Therefore, the ALJ found Plaintiff not disabled prior to March 5, 2023. (R. at 25.) Beginning on March 5, 2023, the date Plaintiff's age category changed, the ALJ found that no jobs existed in the national economy that Plaintiff could perform considering her vocational factors and RFC. (R. at 24-25.) Therefore, Plaintiff became disabled on March 5, 2023. (R. at 25.)

## IV.    ANALYSIS

Plaintiff contends that the ALJ's RFC determination constitutes error because the ALJ (1) failed to account for Plaintiff's physical and mental limitations (ECF No. 15, at 17, 19-21); and (2) improperly discounted the medical opinion of Dr. Nguyen (ECF No. 15, at 17-21). The Court addresses each argument below and finds no reversible error.

### A.  The ALJ Properly Considered Plaintiff's Physical and Mental Limitations and Substantial Evidence Supports the ALJ's Findings

Plaintiff argues that the ALJ failed to include adequate limitations in the RFC to address her mental and physical limitations. (ECF No. 15, at 19.) Specifically, she contends that the RFC "fail[ed] to adequately account for the worsening condition of [Plaintiff's] left arm/hand, memory decline, and balance issues." (ECF No. 15, at 17.) In response, the Commissioner contends that the ALJ considered the objective medical evidence, prior administrative medical findings, Plaintiff's treatment history, and Plaintiff's subjective complaints and reasonably found Plaintiff capable of sedentary unskilled work with additional limitations. (ECF No. 16, at 13.)

13

The Court finds that the ALJ reasonably accounted for Plaintiff's physical and mental limitations in the RFC and sufficiently explained how she made those determinations. Based on the record, the ALJ limited Plaintiff to sedentary work with additional limitations on lifting and carrying with her left upper extremity, pushing, pulling, and fingering with the left upper extremity, use of foot controls with the left lower extremity, and postural limitations. (R. at 18, 20.) The ALJ also limited Plaintiff to understanding and remembering simple instructions, carrying out simple, routine tasks, and being off task 10% of the time considering her fatigue and symptoms from mental impairments. (R. at 18, 20.) The ALJ supported the RFC determination by pointing to objective medical evidence and treatment history, Plaintiff's statements about her activities, and prior administrative medical findings, which did not support greater functional deficits. (R. at 18-23.) This constitutes substantial evidence supporting the RFC determination.

### 1. The ALJ Adopted Reasonable Limitations to Account for Plaintiff's Left Arm/Hand Condition

Contrary to Plaintiff's contention, the ALJ considered and addressed limitations stemming from Plaintiff's left arm/hand impairment in determining her RFC. The ALJ found support in Plaintiff's testimony and neurology records for Plaintiff's left hand, wrist, and finger impairments caused by her CVA history and mild left hemiparesis. (R. at 21.) The ALJ acknowledged Plaintiff's treatment records from her wrist fracture, which noted that her wrist was stable post-operation, Plaintiff was not taking any pain medication, and Plaintiff was "doing well" since surgery. (R. at 20 (citing Ex. 24F/15-17 [R. at 1245-47]).) Further, the ALJ noted that the surgery was recommended to Plaintiff on account of her high level of activity. (R. at 20 (citing Ex. 24F/5 [R. at 1235]).) The ALJ also acknowledged Plaintiff's left finger injury that occurred post-operation, noting that the records found Plaintiff could actively flex and extend her small finger despite some tenderness. (R. at 20 (citing Ex. 24F/15-17 [R. at 1245-47]).) Following surgery,

14

Plaintiff reported doing well without the need for pain medication.  (R. at 20.)  The ALJ addressed physical exams from 2021 and 2022 that reported normal musculoskeletal functioning, including in her left arm.  (R. at 20 (citing Ex. B15F/6, 16 [R. at 881, 891]).)

Additionally, the ALJ considered the medical opinions of state agency medical consultants (R. at 22 (citing Ex. B9A [R. at 127-34]; Ex. B10A [R. at 135-42]).)  The ALJ found their postural and environmental restrictions persuasive but further restricted their assessment of Plaintiff's "lift/carry ability based on her left wrist impairment as well as her left sided hemiparesis."  (R. at 22.)  While the state agency medical consultants found Plaintiff could lift or carry twenty pounds occasionally and ten pounds frequently, the ALJ limited Plaintiff to lifting or carrying less than five pounds with her left, upper extremity based on her testimony that she could not use her left, upper extremity at all.  (R. at 18, 21-22, 131-32, 139-40.)

Thus, the ALJ conducted a thorough evaluation of Plaintiff's left arm/hand impairments and incorporated RFC limitations to address those.  In doing so, the ALJ explained the reasoning behind the RFC determination and cited to substantial evidentiary support for the same.

### 2. The ALJ Properly Considered Plaintiff's Memory Decline in Determining the RFC

The ALJ also considered and addressed Plaintiff's mental impairments in determining the RFC, including her subjective reports as to memory issues.  At step three, the ALJ found Plaintiff moderately limited in her ability to understand, remember, or apply information.  (R. at 17.)  The ALJ acknowledged Plaintiff's complaints of memory deficits related to her history of CVA but noted that her mental status examinations showed "no serious deficits in long-term memory, short-term memory, insight, and judgment."  (R. at 17.)  The ALJ also acknowledged Plaintiff's function reports and testimony, which supported her ability to perform normal necessary household activities, play digital games, shop on the computer, and make candles.  (R. at 17, 66-68, 342-48.)

The ALJ further noted that these activities all demonstrated "a basic level of understanding, remembering, and applying information." (R. at 17.)

Treatment records showed "consistently normal functional findings," other than occasional findings of "fair" insight and judgment and "some 'constricted' affect findings." (R. at 20-21.) Plaintiff's overall findings during examinations with Catoctin Counseling were "within normal limitations throughout." (R. at 21 (citing Ex. B20F [R. at 945-1136]).) Specifically, Plaintiff's "Current Mental Status" exams continually showed intact memory. (R. at 956, 964, 977, 983, 998, 1006, 1015, 1020, 1027, 1033, 1042, 1051, 1057, 1063, 1071, 1077, 1084, 1086, 1088, 1090, 1092, 1094, 1096, 1098, 1105, 1108, 1110, 1120, 1130, 1133.)

The ALJ also considered the medical opinions of state agency psychological consultants. (R. at 22 (citing Ex. B3A [R. at 105-13]; Ex. B6A [R. at 116-24]).) The initial level assessment assigned mild-to-moderate functional limitations caused by severe mental impairments, which the ALJ found persuasive. (R. at 22.) The ALJ determined that this assessment was consistent with the Catoctin Counseling records and Plaintiff's testimony since it showed regular treatment for depression, anxiety, and PTSD "in the context of mental status exams consistently within the range of normal." (R. at 22.)

In consideration of this record evidence, the ALJ limited Plaintiff to understanding and remembering simple instructions and carrying out simple, routine tasks with the ability to be off-task 10% of the workday in addition to normal breaks. (R. at 20.) Plaintiff asserts that the "severity and persistent nature" of her memory decline and mental health symptoms "warrant greater off-task and absenteeism limitations." (ECF 15, at 20.) However, the Court may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Johnson*, 434 F.3d at 653 (quoting *Craig*, 76 F.3d at 589).

16

Here, the ALJ adopted limitations within the RFC to address Plaintiff's mental impairments, and substantial evidence supports the RFC determination, including the mental health treatment records, Plaintiff's activities, and the prior administrative findings. Since the ALJ properly considered Plaintiff's memory decline and other mental impairments in determining the RFC, the Court finds no error.

### 3. The ALJ Properly Considered Plaintiff's Cane Usage and Reported Balance Issues

As for her left leg impairments, the ALJ considered the findings in the record relating to Plaintiff's gait, cane usage, and general musculoskeletal function. (R. at 18-23.) The ALJ acknowledged that Plaintiff's primary care records showed normal musculoskeletal functioning. (R. at 20 (citing Ex. B15F/6, 12, 16 [R. at 881, 887, 891]).) Records also showed a "cane assisted gait" in April 2022 and use of a "quad cane" in December 2021. (R. at 20; *see* R. at 829, 927.) However, the ALJ concluded that although the record contained "some notation of use of an assistive device," there was "more evidence of [Plaintiff's] normal gait and lack of use of a cane. (R. at 20; *see, e.g.,* R. at 614, 642, 824, 881, 887, 896, 907, 1171.) Ultimately, the ALJ determined that Plaintiff did not need a cane or ambulatory device given that "many [o]f her physical exams indicate[d] no such [assistive] device being used and normal gait." (R. at 22.)

Still, the ALJ reduced Plaintiff to sedentary work and limited Plaintiff to occasional climbing of ramps and stairs, never climbing ladders, ropes, or scaffolds, occasional use of foot controls with the left lower extremity, and occasional balancing, stooping, kneeling, crouching, or crawling. (R. at 18.)[7] In making this finding, the ALJ weighed conflicting evidence. When

---

[7] Moreover, even if cane usage should have been added to Plaintiff's RFC, any error would be harmless. The ALJ's step five findings would not change because the VE testified that an individual requiring a cane to ambulate, stand, and/or balance could perform the order clerk and

17

"conflicting evidence allows reasonable minds to differ as to whether a [Plaintiff] is disabled," a reviewing court defers to the ALJ's decision. *Jackson v. Astrue*, 467 F. App'x 214, 216 (4th Cir. 2012) (quoting *Johnson*, 434 F.3d at 653)).  Since the ALJ properly considered Plaintiff's physical impairments in determining the RFC, the Court finds no error.[8]

**B.  The ALJ Applied Correct Legal Standards in Evaluating Dr. Nguyen's Medical Opinion and Substantial Evidence Supports the ALJ's Findings**

Plaintiff also argues that the ALJ failed to properly consider the medical opinion of Dr. Nguyen in accordance with applicable regulations. (ECF No. 15, at 17-19.)  As discussed below, the Court finds that the ALJ adequately explained why she found Dr. Nguyyen's opinion unpersuasive given its lack of support and inconsistency with the record and that substantial evidence supports the ALJ's findings.

*1. Applicable Regulations for Evaluating Medical Opinion Evidence*

Under applicable regulations,[9] the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources without deferring or giving any specific evidentiary weight to any medical source. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Specifically, the ALJ must articulate the "persuasiveness" of all

---

charge account clerk occupations.  (R. at 74-75.)  This precludes Plaintiff from showing harm or prejudice from the alleged error.  *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (stating that the burden of establishing a harmful error "falls upon the party attacking the agency's determination"); *Mascio*, 780 F.3d at 639-40 (recognizing harmless error in the context of social security disability determinations); *Bisceglia v. Colvin*, 173 F. Supp. 3d 326, 333 (E.D. Va. 2016) (considering "the likelihood that the result would have been different" had the ALJ not erred in determining whether error was harmless) (quoting *Shinseki*, 556 U.S. at 411-12).

[8] Because the Court finds no error in the RFC determination, the Court similarly finds no error in the hypotheticals posed to the vocational expert ("VE"), which tracked the RFC determination. (R. at 72-75.)  *See Mascio*, 780 F.3d at 637-39 ("[T]he ALJ may find that [certain limitations do] not affect [claimant]'s ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert.").

[9]  Claims involving medical opinion evidence filed on or after March 27, 2017 are evaluated using a revised regulatory framework.  20 C.F.R. §§ 404.1520c, 416.920c; (*see also* ECF No. 15, at 18; ECF No. 16, at 18.)

medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion[,]" including familiarity with the other evidence or understanding of disability program policies and requirements. *Id.* §§ 404.1520c(b)-(c), 416.920c(b)-(c).

Supportability and consistency are the "most important" factors, and the ALJ must discuss how these factors were considered. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The regulations define supportability and consistency as follows:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

## 2. Dr. Nguyen's Opinion and the ALJ's Assessment

Dr. Nguyen saw Plaintiff for the first time on August 7, 2023, and completed the Stroke Medical Source Statement ten days later, on August 17, 2023. (R. at 1273-77.) Dr. Nguyen reported that Plaintiff suffered from balance problems, poor coordination, loss of manual dexterity, weakness, slight paralysis, unstable walking, falling spells, numbness or tingling, pain, fatigue, vertigo or dizziness, headaches, difficulty remembering, confusion, emotional lability, difficulty solving problems, shaking tremor, and speech or communication difficulties. (R. at 1273.) Dr. Nguyen stated that Plaintiff's conditions had been present since 2005. (R. at 1277.)

19

Dr. Nguyen opined that Plaintiff could walk one city block without resting, sit for fifteen minutes before needing to get up, and stand for five minutes before needing to sit or walk around. (R. at 1274.)  Dr. Nguyen then indicated that Plaintiff could not sit, stand, or walk at all during a normal workday.  (R. at 1274.)  Dr. Nguyen noted that Plaintiff needed a job that allowed shifting positions at will from sitting, standing, or walking.  (R. at 1274.)  Dr. Nguyen further stated that Plaintiff would need to take thirty-minute unscheduled breaks during the workday every thirty minutes, during which Plaintiff would need to lie down or sit quietly.  (R. at 1274.)  If Plaintiff sat for prolonged periods, Dr. Nguyen estimated that she would need to elevate her legs above her head for 50% of an eight-hour workday.  (R. at 1274.)  Dr. Nguyen noted that Plaintiff should use a cane when walking (R. at 1274.)

Dr. Nguyen opined that Plaintiff could never lift more than twenty pounds but could frequently lift less than ten pounds for 34% to 66% of an eight-hour workday.  (R. at 1275.)  Dr. Nguyen also opined that Plaintiff could never twist, crouch, or climb ladders and stairs but could occasionally stoop.  (R. at 1275.)  Dr. Nguyen found that Plaintiff could not use her left hand, arm, or fingers.  (R. at 1273.)  During a workday, Dr. Nguyen stated that Plaintiff could use her right arm, hand, and fingers 100% of the time, and could use her left arm, hand, and fingers 0% of the time.  (R. at 1275.)  Dr. Nguyen concluded Plaintiff was incapable of tolerating even "low stress" work due to her severe anxiety, PTSD, and restless leg syndrome.  (R. at 1276.)  Dr. Nguyen opined that Plaintiff would be off task at least 25% of the time and absent from work more than four days per month.  (R. at 1276.)

The ALJ found Dr. Nguyen's assessment unpersuasive. (R. at 22.)  First, the ALJ concluded that Dr. Nguyen's opinion lacked support.  While Dr. Nguyen reported that Plaintiff's impairments had existed since 2005, Plaintiff's records did not date back that far, and she had

20

worked since that time.  (R. at 22.)  Further, Dr. Nguyen only saw Plaintiff once, ten days before completing the assessment.  (R. at 22.)  At the time Dr. Nguyen treated Plaintiff, she had turned fifty years old and was found "disabled based on her age-change."  (R. at 22.)

Second, the ALJ found the substance of Dr. Nguyen's assessment to be inconsistent internally and with the record evidence.  (R. at 22.)  Dr. Nguyen indicated that Plaintiff could not sit, stand, or walk at all during an eight-hour workday. (R. at 22.)  Dr. Nguyen then contradicts that finding by stating that Plaintiff (1) must sit for half the workday to elevate her legs above her head; (2) can stand for five minutes and sit for fifteen minutes; (3) and requires a cane to ambulate. (R. at 22-23.)  The ALJ also questioned Dr. Nguyen's assessment that Plaintiff must be able to change positions at will, because Dr. Nguyen "ha[d] already limited her to no sitting, standing, or walking, so it is unclear what positions she would need to change."  (R. at 22.)  Furthermore, the ALJ found Dr. Nguyen's determination that Plaintiff needs unscheduled breaks every thirty minutes to be "excessive and unsupported in the records considering her physical examinations and independent daily activities."  (R. at 22; *see* R. at 109-10 (finding that Plaintiff can sit with normal breaks for a total of six hours in an eight-hour workday and stand and/or walk with normal breaks for a total of two hours); R. at 132 (finding Plaintiff can sit with normal breaks for a total of six hours in an eight-hour workday and stand and/or walk with normal breaks for two hours); R. at 346-47 (detailing Plaintiff's report where she stated she could walk fifty yards and take a two-minute break before resuming and that her activities and interests included reading, making candles, playing games on her iPad, and her grandkids).)

Thus, the ALJ applied correct legal standards in evaluating the opinion of Dr. Nguyen and referenced substantial evidence supporting the finding that Dr. Nguyen's restrictive opinion was unpersuasive.  When read as a whole, the ALJ's decision provides an accurate and logical bridge

21

from the record evidence to her conclusions concerning the unpersuasiveness of Dr. Nguyen's opinion.  Therefore, the Court finds no error. [10]

## V.    CONCLUSION

For the reasons set forth above, the Court will DENY Plaintiff's Motion for Summary Judgment or, in the Alternative, Motion for Remand (ECF No. 14), GRANT the Commissioner's Motion for Summary Judgment and Brief in Support Thereof (ECF No. 16), and AFFIRM the final decision of the Commissioner.  An appropriate Order will accompany this Memorandum Opinion.

/s/

Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: March 26, 2026

---

[10]   Plaintiff also argues in a conclusory manner that the VE provided internally inconsistent testimony about whether sedentary positions identified would remain if Plaintiff were limited to less than five pounds.  (ECF No. 15, at 20-21.)  The hearing transcript shows otherwise.  When asked if such a lifting/carrying limitation would change the VE's answer as to available work, the VE responded: "Well, I mean, you can't guarantee that a position would lift less than 10 pounds." (R. at 74.)  The ALJ then asked how such a limitation would impact the prior three sedentary occupations identified by the VE, and the VE responded that two of the three occupations would remain: "The person would be able to perform the charge account clerk and the order clerk but not the weight tester."  (R. at 74.)  Consistent with the VE testimony, the ALJ found that Plaintiff could perform the jobs of order clerk food and beverage and charge account clerk prior to March 5, 2023.  (R. at 24.)  The Court finds no error in the ALJ's step five conclusions.